UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DARRELL ARCHER,

    Plaintiff,

v.                                                               Case No: 8:16-cv-3067-T-36AAS

WAL-MART STORES EAST, LP, et al.,

    Defendants.
_____/

## **ORDER**

This matter comes before the Court upon Defendants' Motions to Dismiss Plaintiff's Fourth Amended Complaint (Doc. 241; Doc. 242) and Plaintiff's responses thereto (Doc. 245; Doc. 248). The Court, having considered the parties' submissions and being fully advised in the premises, will grant in part and deny in part the Motions to Dismiss.

### I.    Background[1]

Plaintiff Darrell Archer ("Plaintiff"), a California citizen, visited Defendant Wal-Mart Stores East, LP ("Walmart") in Polk County, Florida on November 26, 2015 to purchase a television set. Doc. 237 at ¶¶ 5, 14-15. Plaintiff paid for the television by credit card at an automated checkout line with the assistance of a Walmart employee, Diamond Hernandez ("Hernandez"). *Id.* at ¶¶ 14-15, 50. Following the purchase, Plaintiff placed the television in a Walmart shopping cart and proceeded to the Walmart exit immediately adjacent to the automated checkout line. *Id.* at ¶ 16.

---

[1] The facts are derived from the Fourth Amended Complaint (Doc. 237), the allegations of which the Court must accept as true in ruling on the instant motions to dismiss. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992). The Fourth Amended Complaint—Plaintiff's sixth pleading in this case—was drafted by counsel. Doc. 237. Plaintiff's first four complaints, including his Corrected Second Amended Complaint which the Court dismissed in part with prejudice and in part without prejudice, were filed *pro se*. *See* Doc. 181.

When Plaintiff approached the exit, a different Walmart employee, Defendant Kanara Harris ("Harris"), stopped Plaintiff and asked to see his receipt. *Id.* at ¶ 17. Harris positioned himself in front of Plaintiff's shopping cart, preventing Plaintiff from leaving. *Id.*

Plaintiff declined to provide his receipt and explained that he had just purchased the television a few feet away. *Id.* at ¶ 19. Harris continued to block Plaintiff's path to the exit. *Id.* at ¶ 24. Harris summoned fellow Walmart employee, Defendant Charles Caraway ("Caraway"), and a police officer, Defendant Brad Webster ("Webster"), and advised them that Plaintiff had refused to produce his receipt. *Id.* at ¶¶ 26-27.

Webster, who was dressed in police uniform, accused Plaintiff of shoplifting. *Id.* at ¶ 29. Webster advised Plaintiff that he was not free to leave the store, and Plaintiff believed that he was in fact not free to leave the store, either with or without his television. *Id.* at ¶ 30. Caraway continued to detain Plaintiff with the assistance of Webster. *Id.* at ¶ 31. Caraway accused Plaintiff of failing to pay for the television and attempting to shoplift. *Id.*

Caraway summoned his assistant manager, Defendant Kristine Wood ("Wood"), who arrived at the scene. *Id.* at ¶ 32. Another police officer also dressed in police uniform, Defendant Ken Nichols ("Nichols"), arrived at about the same time as Wood. *Id.* at ¶ 33. Wood and Nichols were advised that Plaintiff had been asked to produce a receipt but refused. *Id.* at ¶ 34. They were also advised of Plaintiff's statement that he had just purchased the television at the checkout area immediately adjacent. *Id.* at ¶ 35. Wood, Caraway, Webster, and Nichols all continued to detain Plaintiff. *Id.* at ¶ 36.

A third police officer, Defendant Dan Gaskin ("Gaskin"), also dressed in police uniform, arrived at the scene and was advised of the situation. *Id.* at ¶ 37. Gaskin assisted with detaining Plaintiff. *Id.* at ¶ 38. In addition, Gaskin took and removed Plaintiff's television from his

possession and control. *Id.* Plaintiff's television was not returned to him despite his repeated demands during his detention. *Id.* at ¶ 39. Plaintiff attempted to leave the store with his property on several occasions, but was prevented from doing so by Wood, Caraway, Webster, Nichols, and Gaskin. *Id.* at ¶ 41.

At the time of Plaintiff's detention, Walmart had a store policy which provided that a person who "refuses to show his receipt of purchase . . . to nevertheless be permitted to leave the store with their merchandise." *Id.* at ¶ 22. Wood, Caraway, Harris, Webster, Nichols, and Gaskin were all fully aware of the policy and "each knew that refusal to produce a receipt was neither a justification for the detention of the customer nor seizure of his property." *Id.* at ¶¶ 31, 36, 68. The Walmart employees, Harris, Wood, and Caraway, never attempted to prevent the police officers from seizing Plaintiff's property by "pointing out or reminding them [that] the store policy was to allow customers to leave with their property even if they refused to produce a receipt." *Id.* at ¶ 71.

During Plaintiff's detention, Caraway, Nichols, and Gaskin repeatedly called Plaintiff a "thief," accused him of shoplifting, and threated to arrest him if he didn't show his receipt for the television. *Id.* at ¶ 42. Neither Wood, Caraway, Webster, Nichols, or Gaskin made any effort to conduct an independent investigation to determine if Plaintiff had paid for the television, even though Plaintiff told them that he had made the purchase at the checkout area nearby. *Id.* at ¶ 43.

Hernandez, the employee who helped Plaintiff with his purchase, saw Plaintiff being detained at the exit. *Id.* at ¶ 51. Hernandez contacted her supervisor to advise that Plaintiff had in fact purchased the television. *Id.* at ¶ 52. Hernandez's supervisor, however, failed to take any action or advise Wood, Caraway, Nichols, Gaskin, or Webster of this information. *Id.* at ¶ 53. Instead, the supervisor advised Hernandez to wait until after her shift to advise asset protection that Plaintiff had purchased the television. *Id.*

Plaintiff's detention continued. *Id.* at ¶ 54. During Plaintiff's detention, Wood and Caraway did not actually believe that Plaintiff stole the television "but nevertheless continued to unlawfully detain him and prevent him from leaving the store with his property." *Id.* at ¶ 66. Eventually, Plaintiff was "trespassed" from the premises without the television. *Id.* at ¶ 55. Nichols advised Plaintiff that he had to leave the premises and that he was forbidden from taking the television with him. *Id.* at ¶ 56. Plaintiff insisted that he be allowed to take the television, but was repeatedly advised that he would be arrested if he did not leave the premises immediately without the television. *Id.* at ¶ 57.

To avoid arrest, Plaintiff reluctantly agreed to leave the premises without his television. *Id.* at ¶ 58. Plaintiff was escorted off the premises by the police officers. *Id.* Plaintiff's detention and escort off the property occurred in public in the presence of dozens of customers. *Id.* at ¶ 61. The Walmart customers entering and exiting the store heard the accusations against Plaintiff and observed his detention. *Id.* at ¶ 61. This subjected Plaintiff to humiliation, embarrassment, and emotional distress. *Id.* Throughout the incident, Plaintiff was never threatening, belligerent, obstructive, or disturbing of the public peace and quiet. *Id.* at ¶ 63.

Subsequent investigation, after Plaintiff was forced to leave, revealed that Plaintiff had purchased the television at the checkout aisle near the exit. *Id.* at ¶ 60. During Plaintiff's detention, Harris, Caraway, Wood, and Edward Camp ("Camp") were acting within the scope of their employment with Walmart. *Id.* at ¶¶ 11, 62. Walmart was responsible for the actions of its employees and of the police officers working at Walmart providing extra-duty police services for the store. *Id.* at ¶¶ 69-70.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quotation marks omitted). The court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation" in the complaint. *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III. Discussion

### A. Plaintiff's Claims for Civil Theft in Violation of Florida Statute Section 812.014, Counts V and VI, are Dismissed With Prejudice

Plaintiff asserts two claims for civil theft in violation of Florida Statute section 812.014, a criminal statute. The first such claim, Count V, is asserted against Walmart, Wood, and Caraway. The second such claim, Count VI, is asserted against the Defendant Officers.[2] Both claims are due to be dismissed because they fail to state causes of action for civil theft.

To state a claim for civil theft under Florida law, Plaintiff must allege that Defendants: "(1) knowingly (2) obtained or used, or endeavored to obtain or use, [Plaintiff]'s property with (3)

---

[2] Nichols, Gaskin, and Webster are referred to collectively throughout this Order as the "Defendant Officers." The Defendant Officers together with the remaining defendants are referred to collectively throughout this Order as "Defendants."

'felonious intent' (4) either temporarily or permanently to (a) deprive [Plaintiff] of [hi]s right to or a benefit from the property or (b) appropriate the property to [Defendants'] own use or to the use of any person not entitled to the property." *United Techs. Corp. v Mazer*, 556 F.3d 1260, 1270 (11th Cir. 2009)). Additionally, Florida Statute section 772.11, the section providing a civil remedy for theft in violation of criminal section 812.014, *see United Techs. Corp.*, 556 F.3d at 1270, requires Plaintiff, prior to filing an action for damages, to "make a written demand for $200 or the treble damage amount of the person liable for damages." Fla. Stat. § 772.11(1). As Defendants point out, Plaintiff has not alleged that he made a pre-suit demand for damages. Doc. 241 at p. 16; Doc. 242 at p. 11.

Plaintiff responds that he was not required to send a written demand pursuant to section 772.11 because he is not seeking treble damages as provided by the statute. Rather, Plaintiff argues, Counts V and VI are "cause[s] of action for common law theft alleging a violation of [section] 812.014(1) by [D]efendants." Doc. 245 at p. 19; Doc. 248 at p. 15. Plaintiff cites no legal authority in support of his argument.

Section 812.014(1) is a criminal statute. As the Defendant Officers argue, Plaintiff's opportunity to obtain a civil remedy is through section 772.11—the section authorizing a civil claim for theft made criminal under section 812.014. To state such a claim, Plaintiff must follow the requirements as provided by section 772.11. This, Plaintiff apparently did not do. *See* Doc. 245 at p. 19; Doc. 248 at p. 15 (contending Plaintiff was not required to send written demands while not disputing Defendants' assertions that he did not do so). Therefore, Counts V and VI will be dismissed with prejudice.

B. **Plaintiff's Remaining Tort Claims**

1. *Count VII: Plaintiff's Negligent Training Claim is Sufficiently Pleaded, but Plaintiff's Negligent Supervision Claim is Dismissed*

Count VII of Plaintiff's Fourth Amended Complaint alleges that Walmart and Camp are liable for negligent training and negligent supervision because they failed to properly train and supervise employees "in the proper implementation of the Walmart policy." Doc. 237 at ¶ 152. According to Plaintiff, Walmart had a "receipt checking procedure and policy" that provided that any customer who refused to show his or her receipt when asked by an employee should nevertheless be allowed to leave the store with his or her merchandise. *Id.* at ¶ 155. Plaintiff alleges that Walmart and Camp failed to properly train employees as to the implementation of this policy and "knew or should have known that such failure would result in injury or damage to some of its customers." *Id.* at ¶ 158.

"Though plaintiffs often bring claims for negligent training and negligent supervision together, the two causes of action are distinct." *Adler v. WestJet Airlines, Ltd.*, 31 F. Supp. 3d 1381, 1387 (S.D. Fla. 2014). To state a claim for negligent supervision under Florida law, a plaintiff must allege that during the course of employment, the defendant-employer knew or should have become aware of problems with an employee indicating his unfitness, and that the employer failed to take remedial action such as conducting an investigation, reassigning the unfit employee, or discharging the unfit employee. *Matthews v. City of Gulfport*, 72 F. Supp. 2d 1328, 1340 (M.D. Fla. 1999) (citing *Watson v. City of Hialeah*, 552 So. 2d 1146, 1148 (Fla. 3d DCA 1989). The plaintiff must allege facts sufficient to show that, once the employer received actual or constructive notice of the employee's lack of fitness, it was unreasonable for the employer to fail to investigate

7

or take other corrective action. *Dep't of Envtl. Prot. v. Hardy*, 907 So. 2d 655, 660 (Fla. 5th DCA 2005).

To state a claim for negligent training under Florida law, a plaintiff "must allege that [he] was harmed as a result of an employer's failure to adequately train an employee, and that the nature of the employment put the plaintiff in a 'zone of risk' such that the employer had a duty running to the plaintiff." *Adler*, 31 F. Supp. 3d at 1388. *See also Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1265 (11th Cir. 2001) ("Under Florida law, an employer is liable in tort for reasonably foreseeable damages resulting from the negligent training of its employees and agents.").

Walmart and Camp primarily argue that Plaintiff fails to state a cause of action in Count VII because Plaintiff has not alleged that Walmart or Camp had a legal duty to Plaintiff and because Plaintiff's allegations lack factual support. To the contrary, however, Plaintiff alleges that Walmart and Camp had a duty to properly train employees involved in the monitoring of potential shoplifting. Doc. 237 at ¶¶ 152-154. Plaintiff alleges he was harmed when the Walmart employees detained him and took his property following the wrongful implementation of Walmart's receipt checking policy. *Id.* at ¶¶ 159-162. Accepting Plaintiff's allegations as true, as the Court must do upon a motion to dismiss, Plaintiff adequately pleads that he was in the "reasonably foreseeable zone of risk from the actions" of the Walmart employees, "such that a legal duty of care in training" ran from Walmart and Camp to Plaintiff. *Adler*, 31 F. Supp. 3d at 1388. Plaintiff's allegations, accepted as true, are sufficient to withstand a motion to dismiss with respect to his negligent training claim.[3]

---

[3] Walmart and Camp also allege that Plaintiff's claim for negligent training is contradictory because he alleges elsewhere in the Fourth Amended Complaint that the Defendants were all aware of Walmart's receipt checking policy. However, the fact that Walmart's employees may have been aware of a policy does not necessarily mean that they were properly trained in its implementation. Thus, Plaintiff's claim for negligent training survives.

To the extent Plaintiff's claim in Count VII pleads negligent supervision, however, the claim is dismissed, with prejudice. Plaintiff provides no facts suggesting that Walmart or Camp knew or should have known that any of its employees were unfit or that it was unreasonable for them to fail to investigate or take other corrective action. Therefore, Count VII will proceed only as to Plaintiff's claim for negligent training.

   2. *Counts I through IV are Sufficiently Pleaded*

In its prior Order of dismissal, the Court determined that the Defendant Officers were entitled to qualified immunity and dismissed with prejudice Plaintiff's federal claims against the Defendant Officers in their individual capacities based on the allegations in Plaintiff's Corrected Second Amended Complaint. Doc. 181 at pp. 7-12, 24. Specifically, the Court found that Plaintiff could not plausibly allege a violation of his constitutional rights because the Defendant Officers had, at a minimum, arguable reasonable suspicion to detain Plaintiff and arguable probable cause to seize the television. Doc. 181 at p. 12.

The Court also dismissed Plaintiff's tort claims without prejudice. Dismissal of Plaintiff's tort claims was proper not in light of any immunity analysis, but because the tort claims impermissibly combined legal causes of action, resulting in vague and confusing counts. Doc. 181 at pp. 6, 20-21. Because Plaintiff's tort claims were incomprehensible, the Court was unable to address the plausibility of the claims against any of the Defendants.

Plaintiff's tort claims in Counts I through IV no longer impermissibly combine legal causes of action. Plaintiff asserts the following four claims: false imprisonment as to Walmart, Wood, Caraway, and Harris (Count I), false imprisonment as to the Defendant Officers (Count II), conversion as to Walmart, Wood, and Caraway (Count III), and conversion as to the Defendant Officers (Count IV). Doc. 237.

9

To state a claim for false imprisonment under Florida law, a plaintiff must plead that imprisonment was contrary to his will and was unlawful. *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1338 (S.D. Fla. 2012). "Unlawful" means that the confinement was "unreasonable and unwarranted under the circumstances." *Harris v. Lewis State Bank*, 436 So. 2d 338, 341 (1st DCA 1983). Under Florida law, conversion is an "unauthorized act which deprives another of his property permanently or for an indefinite period of time." *Fogade v. ENB Revocable Trust*, 263 F.3d 1274, 1291 (11th Cir. 2001). Thus, in order to state a claim of conversion, "one must allege facts sufficient to show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property." *Edwards v. Landsman*, 51 So. 3d 1208, 1213 (Fla. 4th DCA 2011).

The Defendant Officers argue that Plaintiff's claims for false imprisonment and conversion fail because reasonable suspicion and/or probable cause exists on the face of the Fourth Amended Complaint. That is, the Defendant Officers argue, Plaintiff cannot plausibly allege that his confinement was "unlawful" or that taking his television was "unauthorized' because the Defendant Officers had reasonable suspicion and/or probable cause, based on the allegations in the Fourth Amended Complaint, to detain Plaintiff and seize the television. Similarly, Walmart, Wood, Caraway, and Harris argue that Plaintiff fails to state a claim for false imprisonment because the Court previously "concluded . . . that Plaintiff's conduct, specifically leaving Walmart carrying a television and refusing to provide a receipt, provided at least reasonable suspicion that the Plaintiff was shoplifting." Doc. 242 at p. 7.

Defendants' arguments are unavailing. The Court previously determined that the Defendant Officers had *arguable* reasonable suspicion and/or *arguable* probable cause to detain and seize under a qualified immunity analysis. The Court did not, however, make a determination

10

as to whether reasonable suspicion and/or probable cause in fact existed. Moreover, to make such a determination now on motions to dismiss would be premature.

Defendants also argue that Plaintiff's allegations are conclusory. As discussed above, however, the Court finds that Plaintiff's remaining claims are improved over his last pleadings. Plaintiff pleads sufficient facts to survive dismissal.

   3. *Sovereign Immunity*

The Defendant Officers further argue that they are entitled to sovereign immunity and that Plaintiff's claims against them in Counts II and IV should be dismissed on that basis.

"Florida's sovereign immunity statute shields police officers from personal liability in tort for injuries or damages they cause while acting within the scope of their employment." *Johnson v. City of Daytona Beach*, No. 6:16-cv-941-Orl-40TBS, 2017 WL 119744, at *6 (M.D. Fla. Jan. 12, 2017) (citing Fla. Stat. § 768.28(9)(a)). Under Florida's sovereign immunity law, there are only

> three categories of conduct which will overcome a police officer's individual immunity: (1) bad faith, (2) malicious purpose, and (3) wanton and willful disregard of human rights, safety, or property. Both bad faith and malicious purpose require a plaintiff to allege facts demonstrating that the officer acted with actual malice, which requires a showing of ill will, hatred, spite, or an evil intent. Alternatively, for conduct to be willful and wanton, it must be shown that the defendant knew, or reasonably should have known, that his or her conduct would naturally or probably result in injury and, with such knowledge, disregarded the foreseeable injurious consequences.

*Id.* (citations and quotations omitted, alterations deleted); *see also Pena v. Marcus*, 715 Fed. Appx. 981, 988 (11th Cir. 2017) (describing "bad faith" as "actual malice and willful and wanton conduct [that] is worse than gross negligence and more reprehensible and unacceptable than mere intentional conduct." (internal quotation marks and citations omitted)).

Plaintiff's Fourth Amended Complaint provides just enough factual material to allow his claims again the Defendant Officers to proceed. Specifically, Plaintiff alleges that the Defendant

11

Officers' failure to investigate Plaintiff's claim that he had just checked out a few feet away was "reprehensible and in bad faith, with malicious purpose and in a manner exhibiting a wanton and willful disregard for the personal and property rights of [P]laintiff." Doc. 237 at ¶¶ 97-98. These allegations, accepted as true as required at the motion to dismiss stage, are sufficient. Further analysis and inference as to whether the Defendant Officers are entitled to sovereign immunity is more appropriately addressed upon motions for summary judgment. *See Bussey-Morice v. Kennedy*, No. 6:11-cv-970-Orl-36GJK, 2012 WL 12899017, at *2 (M.D. Fla. Dec. 12, 2012).

### 4. Punitive Damages

Defendants all argue that Plaintiff's demands for punitive damages should be dismissed from this action.

As discussed in the Court's prior Order of dismissal, Plaintiff need not make a "reasonable showing by evidence in the record or proffered by the claimant" in federal court to maintain a demand for punitive damages. Doc. 181 at pp. 22-23. At the motion to dismiss stage, Plaintiff need only provide something more than entirely conclusory allegations. In the Fourth Amended Complaint, Plaintiff alleges that Defendants acted in bad faith and with malicious purpose when they failed to attempt to conduct any investigation into Plaintiff's claim that he had just paid for the television, despite having the resources to do so. *E.g.*, Doc. 237 at ¶¶ 77-78, 98-100. This is sufficient to withstand the motions to dismiss.

## IV. CONCLUSION

Plaintiff, who is now represented by counsel, has been given more than sufficient opportunity to amend his complaint. Therefore, Counts V and VI are dismissed with prejudice. Count VII is also partially dismissed with prejudice, to the extent it alleges a claim for negligent

supervision. Plaintiff's Fourth Amended Complaint will proceed on Counts I, II, III, IV, and VII (with respect to negligent training only).

Accordingly, it is **ORDERED:**

1. Defendants' Motions to Dismiss (Doc. 241; Doc. 242) are **GRANTED IN PART AND DENIED IN PART.**

2. Counts V and VI of Plaintiff's Fourth Amended Complaint are **DISMISSED WITH PREJUDICE.**

3. This action will proceed on Counts I through IV and Count VII (negligent training only) of the Fourth Amended Complaint.

**DONE AND ORDERED** in Tampa, Florida on July 19, 2019.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any